IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 9, 2025 Session

**RICHARD CRAWFORD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 11-02621          Jennifer Johnson Mitchell, Judge

_____

**No. W2024-00638-CCA-R3-PC**
_____

Petitioner, Richard Crawford, appeals the denial of his petition for post-conviction relief, which challenged his Shelby County Criminal Court convictions of especially aggravated robbery, attempted especially aggravated kidnapping, attempted second degree murder, and employing a firearm during the attempt to commit a dangerous felony, claiming that he was deprived of the effective assistance of counsel and due process of law.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined.  JOHN W. CAMPBELL, SR., J., NOT PARTICIPATING.[1]

Terrell Tooten, Memphis, Tennessee (on appeal), Richard Crawford, *pro se* (at hearing), and for the appellant, Richard Crawford.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Vicki Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Shelby County Grand Jury charged Petitioner with especially aggravated robbery, attempted especially aggravated kidnapping, attempted second degree murder, and employing a firearm during the attempt to commit a dangerous felony, and the case originally went to trial in August 2013.  *State v. Crawford*, No. W2016-01230-CCA-R3-

---

[1] Out of an abundance of caution, Judge Campbell has granted Petitioner's motion to recuse himself. Petitioner's request for another hearing panel is denied.

CD, 2017 WL 5466671 (Tenn. Crim. App. Nov. 13, 2017), *no perm. app. filed*, at *1. The first trial ended in a mistrial, and the second trial began on September 18, 2014. *See id.* Petitioner was represented by trial counsel at his second trial. A Shelby County Criminal Court jury convicted Petitioner as charged, and this court confirmed those convictions on direct appeal. *See id.*

Petitioner's convictions arose from the December 7, 2009 attack on the victim, Mike Murfik, by two assailants in the driveway of his home. *Crawford*, 2017 WL 5466671, at *1. During the attack, Mr. Murfik "heard gunshots and saw his wife shooting" from a second story window in their home. *Id.* One shot struck the first assailant, who ran away, and Mr. Murfik sustained a gunshot wound to his leg. *See id.*, 2017 WL 5466671, at *2. Mr. Murfik identified Petitioner as the person who had attacked him in his driveway and had been shot by Mr. Murfik's wife. *See id.*

Mr. Murfik's wife, Maria Lopez-Murfik,[2] testified that when she saw "two men with guns ordering [Mr.] Murfik to get into his car," she fired at the men, shooting one, who "fell to the ground" as the other man "ran away." *Id.*, 2017 WL 5466671, at *2. Ms. Lopez-Murfik identified Petitioner as the man whom she had seen attack Mr. Murfik and whom she had shot.

Memphis Police Department Officer Quentin Hogue responded to Delta Medical Center to investigate a call that Petitioner "had arrived with a gunshot wound." *Id.*, 2017 WL 5466671, at*3. Petitioner claimed that he had been shot while visiting his girlfriend on Delta Road, but he did not identify either his girlfriend or the friend who he said had driven him to the hospital. *See id.*

On direct appeal, Petitioner challenged under Tennessee Rule of Evidence 608 the trial court's ruling excluding alleged prior bad acts of Mr. Murfik and Ms. Lopez-Murfik and the trial court's ruling that Petitioner would not be permitted to subpoena Mr. Murfik to discuss alleged prior inconsistent statements after he had testified and been released. *See id.*, 2017 WL 5466671, at *4. This court denied relief, finding that Petitioner had waived our consideration of the issue regarding the admission of the witnesses' prior bad acts under Rule 608 by failing to raise that issue in his motion for new trial and by failing to prepare an adequate record for review. *See id.* We concluded that Petitioner's claim that the trial court prevented him from issuing a subpoena to recall Mr. Murfik was not supported by the record. Instead, the record showed that even though the trial court determined that Petitioner could recall Mr. Murfik, Petitioner "abandoned his request" and pivoted to a request that he be permitted "to admit as a self-authenticating non-hearsay exhibit" Mr.

---

[2] This court identified Mr. Murfik's wife's surname as Lopez. At the evidentiary hearing, she testified that she prefers the hyphenated surname Lopez-Murfik, and that is the one that we utilize in this opinion.

Murfik's testimony from Petitioner's first trial, which ended in a mistrial. *Id.*, 2017 WL 5466671, at *6.

Petitioner filed a timely petition for post-conviction relief on October 1, 2018, alleging, among other things, that his counsel at trial and on appeal ("trial counsel") was ineffective in representing Petitioner. Following the appointment of counsel on his post-conviction case, Petitioner filed in October 2019 an amended petition that refined his claim of ineffective assistance of counsel by listing specific instances of what he believed to be deficient performance. Petitioner then filed a pro se amended petition for post-conviction relief in April 2021. Thereafter, Petitioner expressed a desire to proceed pro se, and, following a hearing, the post-conviction court concluded that Petitioner had knowingly and voluntarily waived his right to be represented by counsel. The court ordered previously appointed post-conviction counsel to serve as advisory counsel.

A second pro se amended petition for post-conviction relief followed in October 2021. In that pleading, Petitioner argued that his trial counsel was ineffective for failing to request discovery materials, including Mr. Murfik's criminal history, to be used to impeach Mr. Murfik at trial. Petitioner also claimed that the State engaged in prosecutorial misconduct by failing to disclose Mr. Murfik's criminal history and by withholding "the true identity of" Mr. Murfik. A third amended petition for post-conviction relief contained facts that purportedly supported his claim that the State had knowingly failed to disclose Mr. Murfik's legal first name and criminal history. A fourth amended petition for post-conviction relief appears to be identical to the third.

The post-conviction court conducted evidentiary hearings on January 12, April 13-14, and 27, and June 20, 2023. Former Shelby County Assistant District Attorney General Pamela Fleming, the prosecutor at Petitioner's two trials, testified that the trial court declared a mistrial at Petitioner's first trial after Ms. Murfik-Lopez testified that she recognized Petitioner "from a previous robbery and shooting." The shooting happened at Ms. Murfik's "same residence," and the trial court declared a mistrial without objection from the State.

Following the mistrial, the trial court held a hearing to determine the admissibility of certain information concerning "two separate incidents" trial counsel wanted to introduce at trial to impeach the Murfiks. According to Ms. Fleming, Mr. Murfik, Ms. Lopez-Murfik, and Mr. Murfik's brother were linked to the building in which "Club Vision" operated. The first incident was a nuisance action filed against Mr. Murfik, his wife, and his brother, and arose out of events that occurred in the club's parking lot. Mr. Murfik was listed on the action because the real property was deeded to him. The nuisance action was not connected to the second incident, which arose when it was discovered that Mr. Murfik and his brother had paid on-duty police officers to help prevent people from loitering in the parking lot on weekends. Ms. Fleming testified that Mr. Murfik and his

brother did not realize that the police "weren't able to receive funds" while they were on duty.

As part of the second incident, investigators asked Mr. Murfik and his brother to be confidential informants. Mr. Murfik declined, but his brother agreed to be part of "a sting operation" where the officers who were suspected of malfeasance were fed "fake information" about an alleged raid on the club. Those officers then asked Mr. Murfik's brother for bribes, and that led to the federal indictments of the officers. Mr. Murfik testified that he, unlike his brother, he "never bribed any officers, he never received any money from officers, and that he never agreed to be a confidential informant" in the matter.

Ms. Fleming said that although "the nuisance action was totally separate from the police corruption investigation," trial counsel "later tried to tie the two together" by claiming that Mr. Murfik lied when he denied an ownership interest in Club Vision. Trial counsel theorized that the State "was collaterally estopped from . . . allowing Mr. Murfik to say he wasn't an owner" when the State had listed him as an owner in the nuisance action.

Ms. Fleming said that neither Mr. Murfik nor Ms. Lopez-Murik were ever accused by investigators of "paying a bribe to police officers." Ms. Fleming recalled that trial counsel attempted to present testimony from one of the officers who had participated in the scheme, Timothy Green, but the record is unclear as to when this occurred and Ms. Fleming could not recall the substance of Green's proffered testimony. The trial court did not allow trial counsel to call Green as a witness.

When asked by Petitioner about an alleged conversation she had with Mr. Murfik at the conclusion of his trial testimony, Ms. Fleming adamantly denied that Mr. Murfik told her that he had accidentally testified about the first time Petitioner robbed him in October instead of the December incident, saying, "If he had told me that, I would have told the Court immediately. So if I didn't immediately tell the Court and report that to the Court, it didn't happen." She adamantly maintained that Mr. Murfik "did not ever tell me that he testified falsely at trial" and that "[i]f he told me that he had testified falsely at trial, I would have notified everybody as soon as he told me." Similarly, Ms. Fleming testified that if she had discovered any prior convictions for Mr. Murfik prior to trial, she would have disclosed them to trial counsel.

During cross-examination by the State, Ms. Fleming said that Petitioner's shooting of Mr. Murfik was unrelated to any of the information about Club Vision or the police corruption investigation and "was simply an issue of impeachment." She explained, "[T]he nuisance action was separate until [trial counsel] created the rather novel legal theory that collateral estoppel somehow created a perjury charge against Mr. Murfik." When asked about trial counsel's representation of Petitioner, Ms. Fleming said, "It is hard to imagine anybody who could have gone to greater efforts . . . than [trial counsel] did. He came up

4

with some of the most novel, creative theories of law I've ever heard and by that time I'd already been a prosecutor for quite a while."

The pro se Petitioner testified by having advisory counsel pose questions Petitioner had prepared. As is relevant to this appeal, Petitioner claimed that after Mr. Murfik testified at trial, Petitioner overheard Mr. Murfik tell Ms. Fleming that "he had made a mistake" and testified "about the October 18th case, not to the December 7th case that was in trial." He claimed that Ms. Fleming admitted as much at the hearing on the motion for new trial.

Petitioner claimed that trial counsel failed to exercise "due diligence" when "investigating" Mr. Murfik and that, had he done so, he would have discovered that "Mike Murfik has been deceased since 1999." He insisted that the indictment, which named "Mike Murfik" as the victim, was void because the State had "no grounds for jurisdiction" of a "deceased person" and that he was "convicted on false identity of an individual portraying to be someone that he wasn't." Petitioner maintained that the person who testified in court claiming to be the victim was not Mike Murfik as named in the indictment and was, instead, "100% fake."

Petitioner recalled that his first attorney filed a motion to suppress the pretrial identifications made by the Murfiks and that the trial court held a hearing on that issue. Petitioner agreed that both Mr. Murfik and Ms. Lopez-Murfik testified at the hearing that Petitioner was the person who attacked Mr. Murfik in the driveway of their home. Petitioner insisted, however, that he did not know "who that guy is" that testified "as Mr. Murfik," claiming that "he was a complete stranger to everybody in that courtroom, except the State of Tennessee." Petitioner admitted that he did not tell his trial counsel because he "actually thought he was Mike Murfik" until he "got that newly discovered evidence" in the form of the death certificate "that told me he wasn't Mike Murfik."

When the post-conviction court asked why Petitioner admitted at the sentencing hearing that he shot Mr. Murfik, Petitioner insisted, "I did not know that man." He admitted that he did not tell the trial judge that the man who testified was not Mike Murfik because he "thought he was Mike Murfik." Upon further questioning by the State, Petitioner acknowledged that he wrote several letters to the trial judge and that in one letter, he admitted that he was "guilty of having a weapon and shooting Mr. Murfik in the leg."

The court also held a hearing to determine whether Petitioner would be permitted to impeach Mr. Murfik "with all this stuff going on with his club." The court ruled that the information was inadmissible. Petitioner claimed that the trial court ruled that, had Mr. Murfik and Ms. Lopez-Murfik testified that they owned the club and that they were aware of a robbery and extortion scheme, the defense would be allowed to impeach them with that information. Because they testified that they were not running the club, information about the scheme was deemed irrelevant. Petitioner admitted that trial counsel argued at the hearing on the motion for new trial that the trial court erred by ruling that he would not

be permitted to use information about Mr. Murfik and Ms. Lopez-Murfik to impeach them during trial. As stated above, Petitioner presented this issue as a ground for relief on his direct appeal, but this court found he had waived the issue by failing to properly raise it at trial. *See Crawford*, 2017 WL 5466671 at *4-6.

Petitioner agreed that the Murfiks alleged that Petitioner had robbed them on two different occasions and that it was Ms. Lopez-Murfik's testimony about the other robbery that caused the first trial to end in a mistrial. Petitioner claimed that he wanted the descriptions of the perpetrator provided by Mr. Murfik and Ms. Lopez-Murfik for both incidents to come in at the second trial but no details about the other robbery. Petitioner insisted that Mr. Murfik testified inconsistently during the two trials but did not point to any specific inconsistency. He agreed that Ms. Lopez-Murfik identified him as the person who had attacked Mr. Murfik and who she shot during the attack. He also agreed that Ms. Lopez-Murfik shot him during the incident.

During redirect examination, Petitioner insisted, "When Mr. Murfik got off the stand he ended up approaching Ms. Stark and he told her that he had made a mistake and he testified about the incident that happened in October, at the December trial." He also claimed that the State violated his right to confront the witnesses against him, saying, "[M]y accuser is Mike Murfik and if you bring me anyone other than Mike Murfik into this courtroom and he gives testimony, I have a right to face my accuser and my accuser is Mike Murfik."

Ms. Lopez-Murfik testified that she and Mr. Murfik, whose full name was Abdel Aziz-Mike Murfik, were married in Detroit more than twenty years prior to the hearing. Ms. Lopez-Murfik identified Petitioner as the person who attacked her husband, Abdel Aziz-Mike Murfik. When Petitioner asked, "who is Mike Murfik," Ms. Lopez-Murfik replied, "Him. His name is also Mike. His name is Abdel Aziz-Mike Murfik." She said that Mr. Murfik typically went by "Mike." Ms. Lopez-Murfik said that her husband had never been to federal prison.

Mr. Murfik testified that his full name was Abdel Aziz-Mike Murfik and admitted that he had a federal conviction under the name Abdel Mike Murfik. Mr. Murfik said that although he was convicted, he did not serve any time in confinement. He said that he had no idea how the federal government had listed his name on the docket, but he said that he provided his social security card bearing his full name, Abdel Aziz-Mike Murfik.

When presented with a death certificate bearing the name "Mike Murfik," Mr. Murfik explained that it was for his father, who was born in 1932 and died in 1999. Mr. Murfik said that when he was interviewed by the police following the incident that led to Petitioner's convictions, he provided them with his driver's license, which says Abdel Aziz-Mike Murfik. When they asked what he went by, "I told them it was Mike Murfik."

He added, "My full name is Abdel Aziz-Mike Murfik. Nobody calls me, [h]ey, Abdel Aziz-Mike Murfik, they call me Mike Murfik."

During cross-examination, Mr. Murfik said that Petitioner and his friend, Jeff Wheeling, attacked him, held him at gunpoint, took his keys, and attempted to kill him. Petitioner shot him, and Ms. Lopez-Murfik shot Petitioner, who ran away.

Trial counsel testified that he was aware that Mr. Murfik's first name was Abdel, "but everyone called him Mike Murfik."

Trial counsel described Mr. Murfik as "a slippery individual" who had worked as a confidential informant "in the Tarnished Badge investigation." He claimed that Ms. Fleming "was opposed at every turn to give up anything on Mr. Murfik and [the trial court] largely ruled in her favor." He said that part of the State's theory of the case was that there was only a single shooting in Memphis on the night of the offense, which counsel called "a dubious theory." His strategy was to attack that theory and the identification on grounds that Mr. Murfik and his wife "were not reliable witnesses."

Trial counsel recalled that Mr. Murfik had a conversation with Ms. Fleming after leaving the stand and said that Petitioner told him that Mr. Murfik told Ms. Fleming that he had testified to facts about the October robbery. Trial counsel attempted to recall Mr. Murfik to discuss the conversation, but the trial court refused, saying that Mr. Murfik was no longer under subpoena. Trial counsel then subpoenaed Mr. Murfik, but the trial court still would not allow counsel to recall him to the stand. Trial counsel then attempted to introduce Mr. Murfik's testimony from the first trial, but the trial court would not allow it.

Trial counsel testified that he did not conduct "an NCIC investigation" for Mr. Murfik because "defense attorneys do not have access to NCIC." He was aware of Mr. Murfik's participation in the "Tarnished Badge Operation," but the trial court ruled that that information was inadmissible because it had no impeachment value. Counsel said that he "litigated it ad nauseum" without any relief from the trial court.

Trial counsel said that he advised Petitioner not to offer an allocution at the sentencing hearing, but Petitioner insisted. Counsel said, "I blocked much of it out, but it was a horrendous allocution." He recalled that Petitioner "alleged, basically, he hadn't been given a fair trial, that there was, you know, this conspiracy. And it . . . was like if you wrote a sitcom of everything not to say at an allocution, he checked all the boxes."

Shelby County Sheriff's Office Lieutenant Jason Valentine testified and identified a written narrative that he created during the investigation into the Petitioner's shooting Mr. Murfik in December 2009. In the narrative, Lt. Valentine stated that Mr. Murfik was a convicted felon. He said that he did not recall how he came to have that information. The narrative did not indicate that Lt. Valentine ran an NCIC check on Mr. Murfik, and he did

7

not recall running one. He said that officers searched the Murfiks' residence following the December shooting because they learned after the October shooting that Mr. Murfik had a felony conviction and, as a result, "could not be around guns." A single weapon was discovered during the search.

Former Shelby County Sheriff's Office Sergeant Trini Dean participated in the investigation. He said that it was not his practice to investigate victims, but he did occasionally "do some background into a victim just to get an overall feel for where a case may be going." He agreed that it was not uncommon for victims of crime in Shelby County to also have criminal records. He said that, in fact, he had worked cases where the perpetrator became a victim during the same incident. Mr. Dean did recall the name Abdel Murfik but could not recall where he knew it from. When asked if Abdel Murfik was the victim in this case, he replied, "If Abdel Murfik was an . . . alias or a -- a name that he was associated with before, yes, he was the victim. They would be one in the same."

Petitioner attempted to call Timothy Green as a hearing witness, claiming that that he was "pretty sure" that Mr. Green would testify about "who made the payments to him." The State objected, arguing that the testimony was irrelevant to the post-conviction proceeding. The post-conviction court agreed and ruled that Petitioner would not be allowed to call Mr. Green.

In its written order denying relief, the post-conviction court concluded that although "it is incumbent upon [trial counsel] to request and ensure he receives all discoverable information," Petitioner was aware that Mr. Murfik had a prior felony conviction but "did not tell [trial counsel] that there had been testimony that [Mr. Murfik] had a prior conviction." The court determined that Petitioner was not prejudiced by trial counsel's failure to independently discover the information about Mr. Murfik's prior conviction because "[t]here was overwhelming evidence to support the Petitioner's guilt." The court noted that Petitioner arrived at a nearby hospital with a gunshot wound shortly after Ms. Lopez-Murfik shot one of Mr. Murfik's assailants, that both Mr. Murfik and Ms. Lopez-Murfik identified Petitioner from a photographic lineup as the assailant whom Ms. Lopez-Murfik had shot, and that Petitioner admitted at the sentencing hearing that he shot Mr. Murfik. The court found that trial counsel's trial "strategy and his actions were reasonable" under the circumstances. The court determined that trial counsel's failure to re-call Mr. Murfik during the defense case-in-chief did not prejudice Petitioner because the evidence of his guilt was overwhelming. Similarly, the post-conviction court concluded that Petitioner failed to establish that this court would have granted relief on direct appeal had counsel relied on Rule 608(b) to challenge the trial court's refusal to permit him to impeach Mr. Murfik with the information related to the police corruption investigation. Finally, the court concluded that although trial counsel performed deficiently by failing to make an offer of proof regarding the alleged conversation between Mr. Murfik and Ms. Fleming during the trial, Petitioner could not establish that he was prejudiced by the deficiency.

The post-conviction court also concluded that the State had not committed a *Brady* violation by failing to disclose Mr. Murfik's criminal history to trial counsel before Petitioner's first trial. The court found that the State had no duty to disclose the information and that, in any event, both "Petitioner and his counsel were present in the prior hearing where the information was originally disclosed."

## Analysis

In this appeal, Petitioner claims that the post-conviction court erred by denying him relief, arguing that he was deprived of the effective assistance of counsel and the due process of law.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *see Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997), but the court's conclusions of law receive no deference or presumption of correctness on appeal, *see Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

### I. Ineffective Assistance of Counsel

Petitioner first asserts that he was deprived of the effective assistance of counsel, claiming that trial counsel performed deficiently by "inadvertently waiving arguments regarding impeachment," by failing to discover and use Mr. Murfik's prior federal conviction to impeach him at trial, and by failing to ask for a mistrial when Mr. Murfik "testified about another crime involving himself and" Petitioner. The State contends that post-conviction court correctly properly denied relief.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," and "[t]he petitioner bears the burden of overcoming this presumption." *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted). To meet his burden, the petitioner must clearly and convincingly establish facts to support a conclusion that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). To do so, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

9

to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.263, 370 (Tenn. 1996). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

### A. Impeachment of Mr. Murfik

#### 1. Specific Instances of Conduct

Petitioner contends that trial counsel performed deficiently by failing to argue that Mr. Murfik's "prior bad acts" were admissible under Tennessee Rule of Evidence 608, pointing to this court's conclusion that the issue of the admissibility of this evidence was waived on appeal for failure to properly preserve it. On direct appeal, counsel argued that the trial court erred by denying his bid to "impeach Murfik and Lopez with 'evidence of their involvement in bribing local police' pursuant to Tennessee Rule of Evidence 608(b)" and "by failing to conduct a jury-out hearing pursuant to Rule 608(b), . . . not allowing trial counsel to make an offer of proof on the issue until the motion for new trial, and . . . basing the court's ruling on Tennessee Rule of Evidence 404(b), not Rule 608(b)." *Crawford*, 2017 WL 5466671, at *4. We noted that Petitioner's original counsel moved for a hearing pursuant to Rule 608(b) prior to the first trial "to 'determine the admissibility of prior bad acts'" allegedly committed by Mr. Murfik. *Id.* Before the retrial, trial counsel moved the trial court to reconsider its ruling, but he raised the issue as "relating to" evidence rules 404(b), 608, and 613. *Id.* No transcript of a hearing on the motion was included in the record on direct appeal, but when trial counsel renewed his objection at trial, he relied only on Rule 404(b) "and based his objection on entirely different factual grounds." *Id.* Then, at the hearing on the motion for new trial, trial counsel again relied solely on Rule 404(b), and the trial court determined that there had been no error under that rule. Thus, we concluded that Petitioner had waived the issue of the admissibility of the alleged prior bad acts under Rule 608 by failing to properly preserve it in his motion for new trial. *See id.*, 2017 WL 5466671, at *5.

The post-conviction court determined that Petitioner had not demonstrated prejudice from trial counsel's failure to preserve the issue because he failed to establish that this court would have granted relief on direct appeal had counsel relied on Rule 608(b). We agree with this assessment.

First, contrary to Petitioner's assertion, no evidence established that Mr. Murfik was, in fact, involved in the police corruption investigation, much less that he had committed any act related to the investigation that would have been admissible under Rule 608. Rule 608(b) provides, in pertinent part, as follows:

> Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
>
> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;
>
> (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, but evidence of a specific instance of conduct not qualifying under this paragraph (2) is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of that evidence, supported by specific facts and circumstances, substantially outweighs its prejudicial effect[.]

Tenn. R. Evid. 608(b)(1)-(2).

Here, Petitioner has failed, as he did in the trial court, to establish that any specific instance of Mr. Murfik's conduct that would have been admissible under this rule. Ms. Fleming confirmed that no evidence suggested the Murfiks were paying police officers and that neither was "ever accused by the police of paying a bribe to police officers." She noted that the parties and the trial court were privy to "transcripts and information" from the federal investigation that, she said, "never implicated Mr. Murfik in any shape, form, or fashion." She said that despite this lack of proof, trial counsel attempted to connect Mr. Murfik's inclusion in the separate nuisance action to the police corruption investigation and to "to create an impeachable event at a hearing trying to see if he could be impeached on something else."

11

Although he claims to have "obtained evidence that Mike Murfik engaged in the bribing of police officers[] and was the owner of the club which was under investigation for that conduct," he did not present any such evidence at the evidentiary hearing. Furthermore, Rule 608(b) prohibits the use of extrinsic evidence to prove specific instances of conduct. *See* Tenn. R. Evid. 608(b) ("Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness . . . may not be proved by extrinsic evidence."). Because Rule 608(b) prohibits the use of extrinsic evidence, the post-conviction court did not err by ruling that Petitioner would not be permitted to call Mr. Green to testify about the police corruption investigation.

Finally, and perhaps most importantly, any error in the omission of this evidence was harmless given the overwhelming proof of Petitioner's guilt. Both Mr. Murfik and Ms. Lopez-Murfik identified Petitioner prior to trial and at trial as the assailant who was shot by Ms. Lopez-Murfik as he attacked Mr. Murfik. Petitioner arrived with a gunshot wound at a hospital that was near the Murfiks' residence but not near the location where Petitioner claimed to have been with his girlfriend. At the sentencing hearing, Petitioner admitted shooting Mr. Murfik. Thus, even had trial counsel properly preserved the issue, this court would not have granted him relief, and, accordingly, the post-conviction court did not err by denying relief on this issue.

## 2. Prior Conviction

Petitioner also asserts that trial counsel was ineffective for failing to discover and use Mr. Murfik's prior felony conviction to impeach Mr. Murfik at trial.[3] The post-conviction court concluded that Petitioner was not prejudiced by counsel's failure to independently discover the information about Mr. Murfik's prior conviction because "[t]here was overwhelming evidence to support the Petitioner's guilt." We agree with this assessment but also observe that although Petitioner presented evidence that Mr. Murfik had been convicted of a felony in federal court, Petitioner did not, at any point, present any proof of the precise nature or age of that conviction.

Mr. Murfik candidly acknowledged that he did have a federal conviction, and Lt. Valentine testified that the conviction was for a felony that prevented Mr. Murfik from owning a firearm. However, Petitioner did not present a certified copy of the conviction so that the court could determine whether it would have been admissible pursuant to Tennessee Rule of Evidence 609. *See* Tenn. R. Evid. 609(a)(1)-(2) (providing that convictions for offenses "punishable by death or imprisonment in excess of one year" or involving "dishonesty or false statement" "may be established by public record"); (b)

---

[3] Petitioner's related claim that the State intentionally listed Mr. Murfik's name only as "Mike Murfik" in the indictment to prevent discovery of the convictions and to "deceive" the jury was not borne out by the proof and does not warrant further discussion by this court.

(imposing ten-year time limit for admission of prior convictions unless certain conditions are met). Without specific information about Mr. Murfik's conviction, it is impossible to determine whether it would have been admissible at trial. Moreover, given the overwhelming proof of Petitioner's guilt, it is not reasonable to conclude that the outcome of the trial would have been different had trial counsel introduced evidence of Mr. Murfik's prior conviction.

### B. Mr. Murfik's Conversation with Ms. Fleming

Petitioner claims that trial counsel was ineffective for failing to properly preserve the issue relating to Mr. Murfik's alleged conversation with Ms. Fleming following his trial testimony. The post-conviction court determined that trial counsel's failure to re-call Mr. Murfik during the defense case-in-chief did not prejudice Petitioner because the evidence of his guilt was overwhelming.

In our view, Petitioner failed to establish that trial counsel performed deficiently in this regard. First, although Petitioner claimed that Mr. Murfik told Ms. Fleming that he had testified about the facts of the first time that Petitioner shot and attempted to rob him rather than the second, Ms. Fleming denied that any such conversation took place. Trial counsel testified that he did not hear the conversation. Petitioner did not ask Mr. Murfik about the alleged conversation and did not present any evidence to suggest that Mr. Murfik testified about the wrong incident. Given that Mr. Murfik testified at both the first and second trials, it should have been a simple matter of highlighting any inconsistencies by using transcripts of his testimony at both trials. Petitioner did not do this, and, in consequence, he cannot establish that trial counsel performed deficiently in his handling of this issue.

### I. Due Process

Petitioner insists that he was deprived of due process by the State's failure to provide trial counsel with Mr. Murfik's criminal history as required by *Brady v. Maryland*, 373 U.S. 83 (1963), by the post-conviction court's refusal to allow him to admit certain evidence, and by the post-conviction court's failure to properly exercise its role as thirteenth juror. The State asserts that Petitioner's claims are waived or without merit. We agree with the State.

### A. Brady Claim

Petitioner insists that the State's failure to disclose Mr. Murfik's criminal history prior to trial violated *Brady*, but because Petitioner could have presented this claim on direct appeal, it is waived. *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for

determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.").

## B. Post-Conviction Court's Evidentiary Rulings

Petitioner claims that the post-conviction court erred by refusing to allow him to present evidence to support his claim that Mr. Murfik was not, in fact, the Mike Murfik named in the indictment or that Mr. Murfik was involved in the police corruption scheme. Simply stated, the court did not err.

The post-conviction court granted the *pro se* Petitioner considerable leeway in pursuing his novel theory regarding Mr. Murfik's identity. Mr. Murfik testified that his full name was Abdel Aziz-Mike Murfik and that he went by "Mike." That ends the inquiry. Moreover, for the offenses charged in the indictment, "the identity of the victim does not serve to identify the crime," and, accordingly, the name "of the victim is not an essential element of the crime, and the charging instrument is not defective merely for failing to identify the victim." *State v. Clark*, 2 S.W.3d 233, 235 (Tenn. Crim. App. 1998). Thus, even if Mr. Murfik's name was listed incorrectly, it would have no effect on the indictment or Petitioner's convictions.

## C. Thirteenth Juror/Motion for New Trial

Petitioner's final claim is confusing. He claims that "the motion for new trial hearing is not completed" and that, as a result, "a genuine question still exists on this matter as to if the appellate court every properly received subject matter jurisdiction after the Motion for New Trial Hearing." He says that the trial court's failure to rule on "all the relevant issues" equated to a failure to exercise its role as thirteenth juror, and that, because the original trial judge retired, the current trial judge "is not in a position" to exercise that role, mandating a new trial.

Any issues regarding the jurisdiction of this court on direct appeal or the trial court's exercise of its role as thirteenth juror should have been raised on direct appeal but were not. Accordingly, they are waived. *See* Tenn. Code Ann. § 40-30-106(g). These issues are also waived for failure to raise them in the post-conviction court. An appellant cannot raise an issue for the first time on appeal or change his arguments on appeal. *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023); *see also* Tenn. R. App. P. 36(a).

## II. Cumulative Error

To the extent that Petitioner seeks relief based upon the cumulative effect of the alleged errors, he is not entitled to relief because he has failed to show any errors to

accumulate. *See State v. Hester*, 324 S.W.3d 1, 77 (2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error . . . .").

## Conclusion

Based upon the foregoing analysis, we affirm the judgment of the post-conviction court.


                                            <u>s/ Matthew J. Wilson</u>

                                   MATTHEW J. WILSON, JUDGE